Filed 10/12/21  P. v. Anderson CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISAIAH ANDERSON,<br><br>Defendant and Appellant. | B306100<br><br>(Los Angeles County<br>Super. Ct. No. LA089839) |

APPEAL from an order of the Superior Court of Los Angeles County, Alan K. Schneider, Judge.  Affirmed.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Defendant Isaiah Anderson appeals from the denial of his Penal Code[1] section 1538.5 motion.[2] Defendant pleaded nolo contendere to a second degree burglary count in violation of section 459 and admitted a prior strike pursuant to section 667, subdivision (d) and 1170.12, subdivision (b). Defendant's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, identifying no issues and requesting this court to review the record and determine whether any arguable issue exists on appeal. We have done so and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We set forth the facts (largely taken from the hearing on defendant's suppression motion) and procedural history only relevant to this appeal.

On January 10, 2019, officers from the Los Angeles Police Department (LAPD) arrived at the scene of a traffic collision where they found defendant on a grassy area, injured, and being attended by paramedics. The accident involved a vehicle crossing over a boulevard and colliding into several parked vehicles facing the opposite direction causing some to relocate on top of each other. The driver's vehicle was no longer drivable and was blocking traffic lanes. It ultimately had to be towed.

---

[1] All statutory references are to the Penal Code.

[2] The record does not contain a certificate of probable cause and defendant's notice of appeal states that defendant "in propria-person[a] hereby appeals his conviction pursuant to Pen. Code, §1538.5 (M)." Our review is thus limited to whether the trial court erred in denying defendant's suppression motion and "[g]rounds that arose after entry of the plea and do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(1), (4).)

2

The officers spoke with a group of bystanders. A bystander indicated that defendant had been driving the vehicle; another bystander, as confirmed by another, told an officer that defendant had put "an item of some sort in a nearby bush." A paramedic told one of the officers that defendant appeared to be under the influence.

One of the officers then retrieved a black cap from a nearby bush that contained four pill bottles; defendant admitted the hat was his. The bottles were sealed, and had pieces of paper on top; the papers did not recite any individual's name. The bottles did not "have a prescription on them." "Duomo Pharmacy" was written on one of the bottles, although upon cross-examination, one of the officers stated that the address may have been on a check the officers later found in defendant's vehicle. One of the officers testified that "two of them" (presumably referencing bottles) contained alprazolam and oxycodone—both prescription drugs—and another also recalled the bottles contained oxycodone and "hydrocodone." One of the bottles referenced "morphine."

Based on the "significance of the crash," the bystanders' information about the cap, the paramedic's observation, and the narcotics in the cap, the officers searched the vehicle for evidence of driving under the influence and contraband. They found a paycheck lying on the floor on the driver's side under the steering wheel. The paycheck was made out to "GENCO" and recited the address of Duomo Pharmacy on Victory Boulevard in North Hollywood.

The officers then called the LAPD's Hollywood Division and learned there had been a burglary earlier that morning at the Duomo Pharmacy at the same address as that recited on the paycheck found in defendant's vehicle, an address a few miles

away from the scene of the traffic collision. They also learned a check and pharmaceuticals had been stolen during the burglary.

The officers retrieved surveillance video taken at the pharmacy during the burglary.[3] The video showed two large males, one black,[4] and that one suspect had a gray shirt covering his face and the other had a blue jacket with a bandana covering the lower half of his face. The officer testified that he could tell that one of the suspects is black because he could "see part of the neck at one point during surveillance." The officer testified about his comparison of clothes (including a "bright pair of yellow latex gloves") and shoes depicted in the video with photographs of defendant taken at the scene of the traffic collision and "removed" from him at the hospital, as well as photographs of items found in his car at the scene of the collision. He concluded from those comparisons that "Mr. Anderson what [*sic*] involved in the burglary."

The officer also spoke with a pharmacist at Duomo Pharmacy, who said only one of the four bottles found in defendant's cap was from that pharmacy based on his review of the yellow label on the bottle and the "NDC" number. The pharmacist was able to identify the vendor of the drugs and confirmed that the NDC number matched the vendor's invoice. Because the date reflected expired drugs, the bottle would have been stolen from the pharmacy's recycle bin for return to the manufacturer.

On February 19, 2019, the People filed an information against defendant and alleged two counts of second degree

---

[3] That video is not in our record.

[4] Defendant is Black.

4

burglary in violation of section 459, a prior strike pursuant to sections 667, subdivision (d) and 1170.12, subdivision (b), and two prison priors under section 667.5, subdivision (b). After the trial court granted defendant's request to represent himself, defendant pleaded not guilty to these counts and allegations. Shortly thereafter, the public defender was "reappointed" to represent defendant. Ultimately, however, the trial court allowed defendant to represent himself, including at the suppression hearing and when he pleaded nolo contendere to second degree burglary and admitted the prior strike.

There are two motions to suppress in the record. On July 12, 2019, defendant in propria persona filed a motion to suppress evidence of a "check, yellow gloves, black gloves [and] gray shirt." Defendant claimed that the officers' search of his vehicle shortly after defendant was involved in the traffic collision was pretextual. Specifically, defendant challenged the officers' purported suspicion that defendant had driven under the influence because in defendant's words, his vehicle "reeked of marijuana."[5] He also claimed that the officers conducted an unconstitutional inventory search after they impounded his vehicle.

On January 17, 2020, defendant filed what appears to be a new motion to suppress pursuant to section 1538.5. In that motion, he sought to exclude a check found in his car after the officers found defendant at the scene of a traffic collision and they

---

[5] Apparently, a police report referenced an odor of marijuana, but the trial court eschewed relying on that report, which it said was not in evidence. The court reiterated that it was not considering that reference in ruling on the motion to suppress.

perceived a "strong odor of marijuana" causing them to suspect defendant had driven under the influence. Although it is not entirely clear, defendant appears also to have sought exclusion of the prescription pill bottles found in his hat near where he was lying after the collision. He also sought exclusion of unidentified "seized items from the vehicle" during the search after the vehicle was impounded.

The People opposed both motions. The record includes only one ruling, on February 26, 2020, denying defendant's motion to suppress.

On February 28, 2020, defendant pleaded nolo contendere to one second degree burglary count and one strike. On May 11, 2020, the trial court sentenced him to 32 months in state prison, based on the 16-month low term for his burglary conviction and 16 months for his admitted strike with 16 months of actual custody credit and 16 months of good time/work time credit.[6] Defendant filed his notice of appeal on the same day.

---

[6] On February 28, 2020, after denying defendant's suppression motion, the trial court discussed an open plea and stated that if defendant put off sentencing until May 2nd, he would "never have to go to state prison immediately because you will have credit for time served, and I will release you directly from court to go to the parole office." Upon standby counsel's suggestion, the trial court then corrected the sentencing date to Monday, May 4th. Sentencing actually took place on May 11th, before a different judge, because defendant had been quarantined for several days. Defendant received "credit for time served today."

## DISCUSSION

We appointed counsel to represent defendant in this matter. After examining the record, counsel filed a *Wende* brief raising no issues on appeal and requesting that we independently review the record. (*People v. Wende, supra,* 25 Cal.3d 436.) Defendant was advised by this court of the opportunity to file a supplemental brief; he filed no brief. We have examined the entire record and are satisfied that defendant's attorney has complied with her responsibilities and that no arguable issue exists. (*People v. Kelly* (2006) 40 Cal.4th 106, 110–111; *Wende,* at p. 441; see also *Smith v. Robbins* (2000) 528 U.S. 259, 278.)

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

BENDIX, Acting P. J.

We concur:

CHANEY, J.                          CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.